# AFFIDAVIT

I, Brenda A. Dickson, being duly sworn, depose and state as follows:

## I. BACKGROUND

1. I am a Senior Special Agent assigned to the Homeland Security Investigations (HSI), United States Immigration and Customs Enforcement ("ICE"), Department of Homeland Security (DHS), in Chattanooga, Tennessee. HSI is responsible for enforcing the Customs and Immigration laws and Federal criminal statues of the United States. From March 2001- March 2003, I was employed with the United States Customs Service within the Department of Treasury. In March 2003, the United States Customs Service became Immigration and Customs Enforcement (ICE) within the Department of Homeland Security of which I have been employed since its commencement. I successfully completed the Criminal Investigator Training Program and United States Customs Service Special Agent Training Program in July 2001 at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. As part of my duties, I investigate criminal violations of Title 18 United States Code including but not limited to 18 USC 545 Smuggling goods into the United States and 18 USC 2320, Trafficking of counterfeit goods. While at the US Customs academy in 2001, I received training in investigating crimes relating to Intellectual Property Rights violations, counterfeit goods and smuggling. I have conducted and participated in the execution of numerous types of search warrants and investigations.

1

3. I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers of whom were involved in this investigation. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 545 and Title 18 United States Code, Section 2320 is anticipated to be and or is presently at the Subject Premises, located at 7630 Standifer Gap Rd., Chattanooga, TN 37421.

## II. PREMISES TO BE SEARCHED

4. This Affidavit is being submitted in support of an application for a warrant to search the premises located at 7630 Standifer Gap Rd., Chattanooga, TN 37421 (the "SUBJECT PREMISES"), incorporated herein by reference, and the seizure of evidence, contraband, fruits, and/or instrumentalities of alleged violations of Title 18 USC 545 and Title 18 USC 2320.

5. The SUBJECT PREMISES is more fully described as a single family residence owned by Ilya DYSKIN. The premises is located approximately one and three tenths of a mile from the intersection of Standifer Gap Road and Lee Highway, Chattanooga, TN. It is a single-family, single story residence with a red front door. It is built of brown and tan brick and has a shingle roof. On the premises along the driveway a white post marks the address as 7630.

2

## III. APPLICABLE STATUTES

6. Title 18 United States Code, Section 545 prohibits a person(s) from knowingly and willfully importing or bringing into the United States, any merchandise contrary to law, or receiving, buying, or in any manner facilitating the transportation of such merchandise after importation knowing the same to have been imported or brought into the United States contrary to law.

7. Title 18 United States Code, Section 2320 prohibits anyone who intentionally traffics or attempts to traffic in goods and knowingly uses a counterfeit mark on or in connection with such goods shall be fined $2,000,000 or imprisoned not more than 10 years or both.

## IV. DEFINITIONS

8. The following definitions apply to this Affidavit, including Attachment A:

    a. A "Counterfeit mark," as used herein, means under 18 USC 2320 a spurious mark that is used in connection with trafficking in goods or services; that is identical with or substantially indistinguishable from, a mark registered for those goods or on the principal register in the United States Patent and trademark Office and in use, whether or not the defendant knew such mark was so registered; and the use of which is likely to cause confusion, to cause mistake, or to deceive;

    b. "traffic," as used herein, means under 18 USC 2320 to transport as for consideration for anything of value, or make or obtain control of with intent so to transport.

3

## V. BASIS OF INVESTIGATION

9. On September 9, 2010, Customs and Border Protection Officer (CBPO) Mary Champagne advised that a shipment imported by Ilya Dyskin (AWB #1567412346) was detained due to improper packaging and labeling according to DOT standards (49 CFR 173.166). One of three boxes was examined and found to contain Honda airbag assemblies appearing to be Intellectual Property Rights (IPR) violations. On September 08, 2010, Import Specialist Salvatore Piazza, contacted David N. Makous, Esq with Lewis Brisbois Bisgaard Smith, counsel for Honda to determine whether the products were counterfeit. On September 9, 2010, Mr. Makous confirmed that the Honda airbags were counterfeit products. The total MSRP value for items ordered is $42,840.00. The sixty-eight (68) airbags were exported from Shenzhen Express Co LTD, Hong Kong, China. The importer of record for the shipment is Ilya DYSKIN at 3929 Manor Road, #103, Chattanooga, TN, 37411.

On September 16, 2010, Homeland Security Investigation (HSI) Resident Agent in Charge (RAC) Chattanooga, TN Agents, conducted a controlled delivery of the above shipment to Ilya DYSKIN'S business, The Second Project, located at 3929 Manor Road, Chattanooga, TN 37411. The Second Project is an apartment complex.

Subsequent to the controlled delivery, a search warrant was executed on the premises. A computer was seized along with the airbags delivered, additional airbags and miscellaneous documents.

Pursuant to interviews with Ilya DYSKIN and documentation obtained during the search warrant, it was discovered that the manufacturer of the airbags was Dai ZHENSONG of GUANGZHOU GLOBAL AUTO PARTS INTERNATIONAL GROUP

4

CO, LTD, Room No 8413, 4th Floor, Haiken Building, No. 2 Xiken Yunquann Street, Guangyuan East Road, Guangzhou City, P.R.C.

On October 4, 2010, Dai ZHENSONG entered the United States for the purpose of conducting business with Ilya DYSKIN and recruiting new customers for aftermarket auto parts sales. Upon ZHENSONG'S entry into the United States, Customs and Border Protection Inspectors made contact with Dai ZHENSONG. A Border Search was conducted on ZHENSONG'S computer by HSI Special Agent in Charge (SAC) Atlanta, GA Agents. The information retrieved was provided to HSI RAC Chattanooga, TN Agents for analysis.

The following communications between DYSKIN and ZHENSONG via SKYPE chats on September 17, 2010, were found on ZHENSONG'S computer:

Record number 7703: Ilya DYSKIN: I fell much better today
Record number 7704: dsig2008 (aka Dai ZHENSONG): good
Record number 7705: Ilya DYSKIN: Lawyers were very optimistic
Record number 7706: Ilya DYSKIN: <ss type="yes">(y)</ss>
Record number 7707: dsig2008: do not worry too much
Record number 7708: dsig2008: how is your office computer?
Record number 7709: Ilya DYSKIN: ok … but I need to know that you will help me….
Record number 7710:dsig2008: they return or not?
Record number 7711: Ilya DYSKIN: they will give it back to me next week
Record number 7712: dsig2008: sure, my brother, how can I leave you in trouble
Record number 7713: Ilya DYSKIN: there is not much information on my office computer anyway…
Record number 7714: Ilya DYSKIN: thank you, my brother, thank you…
Record number 7715: Ilya DYSKIN: I know I can trust you…
Record number 7716: dsig2008: yes, you can trust me, I am a man full of duties

Skype chat logs obtained from Ilya DYSKIN'S computer seized during the search warrant of September 16, 2010 and the skype chat logs located on Dai ZHENSONG'S computer revealed discussions between DYSKIN (aka Ilya DYSKIN)

5

and ZHENSONG (aka dsig2008) regarding the following: methods of importing airbags into the United States without suspicion from US Customs; knowledge regarding their illegal activity pertaining to trademark and counterfeit violations; intent to reverse engineer (produce) new airbags sent by Ilya DYSKIN to China; intent to commit Visa Fraud and intent to ship a container of auto parts and other items from China to the United States. It has also been determined that additional conversations have taken place from Ilya DYSKIN'S computer located at his residence of 7630 Standifer Gap Rd., Chattanooga, TN 37421 from the conversations content.

On October 5, 2010, HSI conducted an interview with Ilya DYSKIN in the presence of his attorneys. During the interview, DYSKIN inquired about the return of his computer removed from 3929 Manor Rd, Chattanooga, TN. DYSKIN was advised that his computer was currently being analyzed. DYSKIN replied that it was okay, and most of his things were on his home computer anyway. Pursuant to the interview, DYSKIN turned over an additional 264 counterfeit airbags. Some of these counterfeit airbags had been shipped to 7630 Standifer Gap Rd., Chattanooga, TN 37421, DYSKIN'S residence.

The Skype conversations reveal that both DYSKIN and ZHENSONG utilize multiple computers to communicate. ZHENSONG'S laptop computer reveals that DYSKIN and ZHENSONG had incriminating conversations on DYSKIN'S home computer or laptop. The skype conversations are recorded on the hard drive of each computer involved in the conversation.

6

Case 1:10-mj-00349-WBC   Document 2   Filed 11/04/10   Page 6 of 10   PageID #: 7

Skype conversations retrieved from ZHENSONG's laptop computer dated after September 16, 2010 reveal that DYSKIN and ZHENSONG continued to have incriminating conversations via Skype. DYSKIN requested that ZHENSONG falsify and present paperwork authenticating the counterfeit airbags by claiming that they were legally purchased from salvage yards/vehicles in China. DYSKIN also requested that ZHENSONG bring with him from China, counterfeit items into the United States as presents for his family. These items included an I-Phone, an I-Pad and an Apple Mac Book Air. ZHENSONG asked if US Customs would seize the items if he were to bring them from China with him because they were "copies" of famous brands. DYSKIN informed ZHENSONG that he should not bring a lot of items only a couple and he should be okay with US Customs, and that DYSKIN would repay him for the items.

## X. CONCLUSION

10. HSI RAC Chattanooga Agents currently have DYSKIN's work computer and ZHENSONG's laptop to compare skype chats against, but are unable to search for conversations between DYSKIN and ZHENSONG from DYSKIN's home computer and/or laptop and ZHENSONG's work computer. The skype chats from DYSKIN's work computer and ZHENSONG's laptop computer indicated that both DYSKIN and ZHENSONG are using multiple computers to communicate through skype and/or e mail. It is believed that in addition to the communications, additional evidence would be located, including but not limited to, invoices, sales, shipping labels and customers (see Attachment A). Based on the foregoing, I believe there is probable cause to believe that evidence, fruits, and/or instrumentalities of the crimes, in violation of Title 18 United

7

States Code 545 and Title 18 United States Code 2320, are located at the SUBJECT PREMISES. I therefore request that the Court issue a warrant authorizing a search of the above residence.

The above information is true and correct to the best of my knowledge, information and belief.

_____
Brenda Dickson, Special Agent
United States Immigration and Customs Enforcement

Subscribed and sworn to before me
November 4, 2010

_____
WILLIAM B. CARTER
UNITED STATES MAGISTRATE JUDGE

8

ATTACHMENT A

(Premises located at 7630 Standifer Gap Road., Chattanooga,TN, 37421)

DESCRIPTION OF PROPERTY TO BE SEIZED:

SECTION 1

All delivered counterfeit goods and any other counterfeit goods.

SECTION II

a) Books, records, receipts, notes, ledgers, and/or other papers relating to the mailing, transportation, ordering, purchasing, importation and/or distribution of counterfeit goods;

b) Books, financial records, receipts, bank statements and records, money drafts, letters of credit, money orders, cashier's checks and/or other items evidencing the obtaining, secreting transferring, concealment and/or expenditure of money made from dealing in counterfeit goods, and/or importation of counterfeit goods;

c) Records reflecting the ownership of assets obtained from illegal importation of and/or trafficking in counterfeit goods;

d) Records of telephone numbers, address books, or papers which reflect names, addresses, and /or telephone numbers of associates and co-conspirators involved directly and indirectly in the importation and/or trafficking of counterfeit goods and/or associates who have a monetary consideration an/or interest in the illegal importation of and trafficking in counterfeit goods;

e) Correspondence and emails which relate to the importation, trafficking, distribution and/or shipment of counterfeit goods;

f) Records of personal or business activities relating to the operation or ownership of any computer hardware, software, storage media, or data (such as user names, passwords, telephone, records, notes, books, diaries and reference materials);

g) Records pertaining to accounts held with companies providing Internet access or remote storage of either data or storage media

SECTION III

All computer hardware; computer software; computer-related documentation; and storage media. Off-site searching of such hardware, software, documentation, and storage media may be conducted and shall be limited to searching for the items

described in Section II of the attachment and shall be done according to the procedures set out below.

### PROCEDURES FOR SEIZING COMPUTERS AND RELATED DEVICES

1.) Seizing hardware and software
Agents are authorized to seize and remove from the premises the computer hardware, software, related documentation and storage media, so that computer analysts can accurately retrieve the items authorized by this warrant in a laboratory or other controlled environment. The retrieval process does NOT need to be completed within 14 days after the date of the warrant or before the return of the written inventory required by Fed. R. Crim. P. 41(a).

2.) Returning hardware and software
If, after inspecting a seized computer system, the agents and computer analysts determine that these items are no longer necessary to retrieve and preserve electronic evidence, the prosecutor determines that they need not be preserved as evidence, fruits, or instrumentalities of a crime and these items do not contain contraband, they should be returned within a reasonable time, upon written request.

If the computer system cannot be returned, agents should, upon written request, make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that are neither the fruits nor instrumentalities of crime or contraband.

SECTION IV

All cell phones may be seized and searched offsite relating to counterfeit goods importation, trafficking, and/or distribution:
a. Phone numbers missed, dialed and/or received;
b. Text messages;
c. Notes, contacts, and/or drafts;
d. Voice mail messages; and/or
e. Personal information and/or pictures showing possession, use and/or ownership of counterfeit goods.